PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| UNITED STATES DISTRICT COURT | District EASTERN DISTRICT OF LOUISIANA |
|---|---|

| Name DONALD DEGRUY | Prisoner No. 360955 | Docket No. |
|---|---|---|

| Place of Confinement LOUISIANA STATE PENITENTIARY, ANGOLA, LA 70712 |
|---|

| Name of Petitioner DONALD DEGRUY | **V.** | Name of Respondent BURL CAIN |
|---|---|---|

The Attorney General of the State of:
LOUISIANA

06-4140
SECT.D MAG 1

## PETITION

1. Name and location of court which entered the judgment of
   conviction under attack <u>Criminal District Court, Parish or Orleans,</u>
   <u>New Orleans, La. 70119</u>

2. Date of judgment of conviction <u>March 22, 2002.</u>

3. Length of sentence <u>66 years</u>

4. Nature of offense involved (all counts) <u>Armed robbery</u>

5. What was your plea? (Check one)
   (a)   Not guilty            ☒
   (b)   Guilty               ☐
   (c)   Nolo Contendere      ☐
   If you entered a guilty plea to one count or indictment, and a not
   guilty plea to another count or indictment, give details:

6. Kind of trial: (Check one)
   (a)   Jury                 ☒
   (b)   Judge only           ☐

7. Did you testify at the trial?
   Yes ☒   No   ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒   No   ☐

9. If you did appeal, answer the following:
   (a) Name of court <u>Fourth Circuit Court of Appeal</u>
   (b) Result <u>Denied</u>
   (c) Date of result <u>April 4, 2003</u>
   (d) Grounds raised <u>Suggestive identification, and ineffective counsel.</u>

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes ☒     No ☐

11.     If your answer to 10 was "yes", give the following information:

(a) (1) Name of court Criminal District Court

    (2) Nature of proceeding Post conviction

    (3) Grounds raised Prosecution obtained conviction with the use of false and misleading facts; violation of right to jury trial; and, ineffective appellate counsel.

    (4) Did you receive an evidentiary hearing on your petition, application or motion?

        Yes ☐     No ☒

    (5) Result denied

    (6) Date of result May 13, 2005

(b) As to any second petition, application or motion give the same information:

    (1) Name of court

    (2) Nature of proceeding

    (3) Grounds raised

    (4) Did you receive an evidentiary hearing on your petition, application or motion?

        Yes ☐     No ☐

    (5) Result

    (6) Date of result

(c) As to any third petition, application or motion, give the same information:

    (1) Name of court

    (2) Nature of proceeding

    (3) Grounds raised

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ☐     No ☐

(5) Result_____

(6) Date of result_____

(d) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.   Yes ☒     No ☐
(2) Second petition, etc.  Yes ☐     No ☐
(3) Third petition, etc.   Yes ☐     No ☐

(e) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

   **Caution**: In order to proceed in the federal court, you must ordin-arily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconsti-tutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlaw-

(b)  At arraignment and plea PATRICK HUFFIT, OIDP.

(c)  At trial HARRY TERVELON OIDP

(d)  At sentencing HARRY TERVELON, OIDP

(e)  On appeal CHRISTOPHER ABERLE, P.O.Box 8583, Mandaville, La. 70470

(f)  In any post-conviction proceeding None

(g)  On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes ☐    No  ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐    No ☒

(a)  If so, give name and location of court which imposed sentence to be served in the future:

_____

(b)  Give date and length of the above sentence: _____

_____

(c)  Have you filed, or do you contemplate filing any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐    No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)


I declare under penalty of perjury that the foregoing is true and correct.

Executed on_____7-17-06_____
            (date)

                    X _Donald DeGuy #360955_
                      Signature of Petitioner

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


Civil Action


Sect. Mag: _____


No. _____


Donald DEGRUY,
                    Petitioner

versus

Burl CAIN, Warden
Louisiana State Penitentiary


# *Writ of Habeas Corpus*

Original Pro Se writ of Habeas Corpus on behalf of petitioner Donald Degruy, DOC#360955, from his state conviction in the Parish of Orleans, Criminal District Court, New Orleans, Louisiana before the Honorable Raymond C. Bigelow Sec., "I" docket No. 423-502.


*Respectfully Submitted by;*
*Donald Degruy, Pro Se Litigant*
*DOC# 340955, Camp C Wolf-2*
*Louisiana State Penitentiary*
*Angola, La. 70712*

# TABLE OF CONTENTS

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF CASE / FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Assignment of Error I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Assignment of Error  II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Assignment or Error III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

AFFIDAVIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

28 U.S.C. §2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C.§2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Felder v. Johnson*, 180 F.3d 206, 209 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Lindh v. Murphy*, 521 U.S. 320, 326-327, 117 S.Ct. 2059, 138 S.Ct. L.Ed.2d 841 (1997) . . . . . 1

*Napue v. Illinois*, 79 S.Ct. 11733, 1177, 360 U.S. 364, 269 (1959) . . . . . . . . . . . . . . . . . . . . . . . 3

*Sanchez v. United States*, 782 F.2d 928, (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*State v. Cleveland*, III 959 S.W.2d 548 (Tenn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*State v. Gobert*, 2000KAA-924 (La.App. 3Cir. 02/28/01), 780 So.2d 616 . . . . . . . . . . . . . . . . . 8

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) . . . . . . . . . . . 14

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

Donald DEGRUY,                                    Civil Action

versus                                            Sect. Mag: _____

Burl CAIN, Warden                                 No. _____
Louisiana State Penitentiary

## MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

**MAY IT PLEASE THE COURT:**

NOW COMES, Donald Degruy, petitioner herein filing the instant petition for Writ of Habeas Corpus and Memorandum in Support wherein petitioner would show the Court the following:

### JURISDICTION

This Honorable Court has the power to grant petitioner's Federal Writ of Habeas Corpus by authorization of 28 U.S.C. §2241. A person in custody in a state prison may seek relief by a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.

*Constitutional Guidelines for Federal Habeas Review.*

The Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), which amended 28 U.S.C. § 2254, applies to all habeas petitions filed after April 24, 1996, the effective date of the Act. See, *Lindh v. Murphy*, 521 U.S. 320, 326-327, 117 S.Ct. 2059, 138 S.Ct. L.Ed.2d 841 (1997); *Felder v. Johnson*, 180 F.3d 206, 209 (5th Cir. 1999). As this Complaint was filed after the effective date of AEDPA, it is governed by AEDPA. AEDPA allows for the grant of a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings where such adjudication:

    (1)    Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

1

(2)     Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The court must assume that determinations of factual issues made by the state court are correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

## STATEMENT OF CASE / FACTS

On July 27, 2000, the State charged petitioner Donald Degruy with armed robbery in violation of LSA - R.S. 14:64. Following a trial on January 14, 2002, a jury was unable to reach a verdict. Retrial began on February 21, 2002. After the second day of trial, a jury returned a verdict of guilty as charged. On march 22, 2002, petitioner pleaded guilty to a triple bill, and the court sentenced him to 66 years in prison without the possibility of parole, probation of suspension of sentence.

Appeal was taken to the Fourth Circuit Court of Appeals wherein counsel filed an Anders brief but petitioner supplemented alleging suggestive identification and ineffective assistance of counsel. The court denied relief on April 2, 2003. See *State v. Degruy*, 844 So.2d 430 (Table), 2002-1868 (No. 2002-KA-1868) (La.App. 4Cir. 4/2/03), *writ denied*, 858 So.2d 418, 2003-1283 (No.2003-KO-1283) (La. 11/14/03). Petitioner sought post conviction relief asserting three assignments of error: (1) the state abotained this conviction by using false and misleading facts; (2) the court erred in instructing the jury while one of the jurors was in the restroom; and (3) counsel was ineffective for failure to object to other crimes evidence. Relief was denied by the district, intermediate and Supreme Court. *State v. Degruy*, --- So.2d ---, 2006 WL 1666320, 2005-2587 (La.6/2/06). Petitioner is now before this Honorable Court.

*Facts:*

Late in the morning on May 8, 2001, two men walked into the Esplanade Pharmacy and robbed two cashiers of approximately $8,000 in cash. One of the perpetrators went to the pharmacy counter in the back of the store and robbed the pharmacist of all the money in the cash register. That

2

perpetrator carried out the robbery using what appeared to be a gun wrapped in a bandanna. The other perpetrator robbed the front cashier, using a butcher knife. The robbery of the front cashier was captured on surveillance video tape, which was played on the local television news. An anonymous caller identified the perpetrator depicted in the surveillance video as the defendant, Donald Degruy. A photographic lineup was then shown to the front cashier, who identified the photograph of petitioner.

## ISSUES PRESENTED

I.      The State obtained petitioner's criminal conviction with the use of false and misleading facts, thus committing fraud upon the court.

II.     Petitioner's right to a jury trial was violated when one juror was excused for a restroom break prior to receiving jury instructions and the juror was allowed to deliberate with the rest of the jury panel without ever receiving the court's instructions.

III.    Counsel failed to object to the continuous use of other crimes evidence and failed to impeach the testimony of Ms. Emma Porter.

## ARGUMENT

*Assignment of Error I:*

The State obtained petitioner's criminal conviction with the use of false and misleading facts, thus committing fraud upon the court.

A conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. *Napue v. Illinois*, 79 S.Ct. 11733, 1177, 360 U.S. 364, 269 (1959). The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely

3

that a defendant's life or liberty may depend.

In the instant case, petitioner testified in his support of his alibi defense. On cross examination, the State attempted to impeach petitioner's assertion (that he was at his mother-in-law's house on the day of the armed robbery) with his testimony from his first trial. The State's insinuation in the instant case was that petitioner was lying, that petitioner had previously testified that on the day of the armed robbery he had taken his sister to Meadowcrest Hospital, where as now, he was testifying that he was at his mother-in-law's house. The State had reason to believe that on the day of the armed robbery, May 8, 2001, petitioner's sister did not go to Meadowcrest Hospital. However, in the first trial, petitioner not once testified that he had gone to Meadowcrest Hospital on May 8th. In fact, petitioner testified that he was at his mother-in-law's house on May 8th. This testimony was consistent with the testimony given in the instant case. Yet, the State's insinuations in this case that petitioner was lying bore on in the hearing of the jury without any objections from petitioner's counsel that the State's representations of the contents of petitioner's first trial testimony were false.

During trial, the following exchange took place in reference to May 8, 2001.

Q    It wasn't a particular day that stands out in your mind for any particular reason?

A    No. Somewhere during that time, I don't know if it was the 8th, Th or 10th, I don't really know. I brought my sister to the hospital, if that's what you're referring to.

(Tr.II, Vol. 2, p. 36).

Q    You don't know whether it was the 8th, Th or the 10th?

A    No.

Q    But you know on the 8th, for sure, you were just sitting at your mother's house?

A    My mother-in-law.

\*        \*        \*

Q    Now, Mr. Degruy, do you remember testifying at a previous hearing?

4

A       Yes.

Q       And do you remember being sworn in, in that hearing?

A       Yes, ma'am.

Q       And you remember testifying what you were doing on May 8th?

A       Yes, ma'am.

Q       And you remember saying that on May 8th you were at Meadowcrest Hospital with your sister Tabalike Forebes?

A       Yes, I brought her to Meadowcrest Hospital?

Q       On May 8th?

A       Yes, ma'am.

Q       And is that what you are telling these people today?

A       Yes, ma'am. Well, I testified that I had brought my sister to the hospital, but I was grieving over my grandmother. I was real sick. I don't know exactly what day, but I know it was during that week that I brought my sister to thehospitall.

Q       But at the time that you testified you were absolutely certain it was on May 8th, right?

A       Yes.

Q       And you were absolutely certain that you were at the hospital between 9:00 a.m. in the morning and noon in the afternoon?

A       Somewhere around then.

Q       You were absolutely certain and you swore under oath and that was your testimony?

A       Yes.

                        *       *       *

Q       How Come today you don't know for sure that you were at Meadowcrest Hospital when back in January you knew for sure?

                        *       *       *

A       I wasn't really.

                        5

Q       -you knew for certain you were there.

A       I wasn't sure then. I just knew that I didn't commit this robbery, I know I didn't commit this crime. I knew ya'll - I mean, I was incarcerated for something I didn't commit, a crime I didn't commit.

Q       Mr. Degruy, would you like to review your testimony from that hearing?

A       Well, if I could.

Q       Okay.

The Court:
        Which page are you referring to?

Ms. Billings:
        I'm referring to page 118, starting on line 3 going to line 26.

The Court:
        Okay.

                        *       *       *

Q       Do you remember saying that, for sure you were at Meadowcrest Hospital on May 8th?

A       No, I don't remember saying for sure I was at Meadowcrest Hospital on May 8th.

                        *       *       *

Q       Do you remember the question, "Now, I want to get a couple of things clear here. Did they give any papers to your sister from being discharged from Meadowcrest Hospital?" And you said, "For sure."

Mr. Tervalon:
        Your Honor, may she read the whole sentence, "For sure, I don't know" is what's on the transcript?

                        *       *       *

Q       And even though you previously testified under oath that that's where you were on May 8th today you're not so sure that's where you were?

A       I wasn't sure that day. I just know I didn't commit this crime.

Q       Okay. So, Mr. Degruy, you're absolutely certain that you were at your mother-in-law's that day?

                        6

A    Yes, ma'am. Yes, ma'am.

Q    All day long?

A    Yes, ma'am.

Q    So you weren't at Meadowcrest that day?
A    I don't know if it was May 8th, May - I don't know exactly what day it was.

Q    Okay. Which testimony is correct, Mr. Degruy, your testimony previously that you were
     at Meadowcrest on May 8th or your testimony today that you were at your mother-in-
     law's all day?

A    I told you I didn't know for sure that day, and I'm telling you I don't know for sure
     what day it was.
     (Tr.II, Vol. 2, pp. 35-41)

                              *       *       *

     From this lengthy exchange, it is evident that the State was making an effort to impeach

petitioner's instant trial testimony about being at his mother-in-law's house, with his testimony from

his first trial. Despite this testimony, upon close review of petitioner's entire testimony from his first

trial, he not once said that he went to Meadowcrest Hospital on May 8, 2001. This misrepresentation

by the State of what petitioner had previously testified to has created undue damage to his credibility

in the eyes of the jury. Petitioner was adamant in both testimonies that he was at his mother-in-law's

house on May 8, 2001, and hat he could not recall the day that he went to Meadowcrest Hospital.

However, because the jury in the instant trial was not provided with the entire contents of petitioner's

testimony at his first trial, they were left with the reasonable inference that petitioner was not credible.

The State had painted a picture that petitioner changed his testimony about where he was on May 8,

2001.

     In closing arguments by the State, the following was said in reference to May 8, 2001:

     Well, let me tell you what, ladies and gentlemen, the last time he testified he was sure that he

went to Meadowcrest on that day. Kawanda Howard testified she was sure that they went to

                                        7

Meadowcrest that day.  And we went through every single detail.

And they knew they went to Meadowcrest that day because their grandmother had died days prior on the 5th, and they knew it was the 8th they went to Meadowcrest.

And today, they don't know that it's the 8th. They know that they went to Meadowcrest, but now they're not so sure it was the 8th. How convenient. (Tr. II, Vol. 2, p. 55).

*    *    *

And the defendant was positive when he testified at previous hearings that was the day he went. And today, he pleads with you, well, I'm not sure, but you've got to believe me, I didn't do it. Why? (Tr.II, Vol. 2, p. 56).

In the analogous case of *State v. Gobert*, 2000KAA-924 (La.App. 3Cir. 02/28/01), 780 So.2d 616, the Louisiana Third Circuit Court of Appeal reversed a second-degree murder defendant's conviction and sentence on the grounds that the prosecution had misstated the law in its rebuttal closing argument. Like petitioner, Gobert took the stand in his own defense. On direct examination, Gobert opened himself up for character attack by answering his counsel's questions that he did not have a history of violence and that his only criminal convictions (which was obtained several months after the date of the murder incident), were two counts of worthless checks under $25 each. Despite the prosecution's opportunity to cross-examine Gobert on specific acts of violence and a criminal record and its extensive interrogation of Gobert which consumed some twenty one pages of the record, the prosecution did not ask Gobert one question regarding his prior actions of record in order to rebut his assertions. Instead, the prosecution chose to perfect a damning and unsubstantiated attack upon Gobert and his counsel by insinuating during rebuttal argument that Gobert did have a violent past but that the prosecution could not introduce any past acts of misconduct. The particular portion of the record the Third Circuit took into consideration is as follows:

8

Near the end of his closing argument, Mr. Gobert's defense counsel stated:

> What kind of person was [Mr. Gobert] anyway? Think about his record. Is he the kind of person who really needs to be segregated from society for the rest of his life? He had no history of violence, no criminal convictions at the time of the offense, he'd written two hot checks, both of them for less than $25. Honorably discharged from the Marine Corps. That's what this manslaughter statute is for, it's for a good person who made a mistake under extreme pressure, sudden passion, heat of blood.

Then, beginning with the State's rebuttal closing argument, the following exchange took place:

> The State: [The defense attorney] don't play fair [sic]. He don't [sic] play fair. "He says what kind of man was [Mr. Gobert]? He was a good man with no history of violence." Now he knows as a lawyer that I cannot introduce any past acts of misconduct on the part of [Mr. Gobert].

> Defense Counsel:   I object, Your Honor.

> The State:   Your Honor, that's the law, he said, I'm allowed to talk about it.

> The Court:   (sic) Right. You talked about -

> The State:   He said, "he's a great guy, you haven't heard anything bad about him, no history of violence." Well, I'm not allowed to introduce any history, whether there is one or not. He knows that. He wants you to think [the Defendant] is a great guy, even though he knows I can't prove anything other than the offense charged. I didn't charge him with being a bad guy. I charged him with murder. (Brackets in original).

Following this exchange, defense counsel moved for a mistrial, outside the jury's presence.

The trial court denied the motion. Finding error, the Third Circuit reversed, stating in relevant part:

> ... Defense counsel's closing references to Mr. Gobert's prior record clearly mirror his direct examination. Certainly, they did not consist of new or improper references to which the State should have been allowed to respond, *carte blanche*, during rebuttal, and the State's allegations that defense counsel "don't [sic] play fair" proved inaccurate.

> The State's assertions of improper conduct by defense counsel are particularly troubling, because the State itself decided to forgo Mr. Gobert's cross-examination on this issue. It did not allege, whether at trial, in brief, or during oral argument before this court, the existence of any such prior misconduct or criminal record. However, the State chose to perfect a damning and unsubstantial attack upon Mr. Gobert and his counsel in a trial which resulted in a mere ten-to-two vote. Its course or action clearly

and unambiguously improperly implied that Mr. Gobert lied under oath regarding his prior criminal history, which, given the grave importance of his credibility regarding the verdict, we do not find harmless beyond a reasonable doubt.

Accordingly, we hold that the trial court erred when it denied Mr. Gobert's motion for a mistrial. We reverse his conviction and sentence.
(Gobert, supra, at 617-19).

In petitioner's case, the misstatement is not of what the law is, but of what the facts were, facts that petitioner did not attest in his first trial, facts that the State implied before the jury in the second trial that petitioner did attest to. As with Gobert, petitioner's credibility was crucial. His only defense in this case was the defense of alibi. By implying that petitioner had testified previously to being at the Meadowcrest Hospital on May 8, 2001, then change his testimony that he was at his mother-in-law's house on May 8, 2001, and not the hospital would necessarily permit the jury to infer that petitioner was lying, shattering his credibility. In both trials, petitioner testified that on the specific date of the robbery that he was at his mother-in-law's house and that it was sometime during the week that he was at the hospital. His accounting for his whereabouts revolved around the death of his grandmother just three weeks prior to the armed robbery. Because of the State's implications that petitioner had previously testified that he was certain he was at the hospital on May 8, 2001, then later changing his story has done nothing but cast petitioner in the light of being a liar in the eyes of the jury.

To compound matters, defense counsel did nothing to alleviate the problem. Counsel could have, on redirect, question petitioner further about his previous testimony by having petitioner review the entire testimony and state for the record and the jury's benefit where in the previous testimony petitioner said anything about being at the hospital on May 8th. But this did not happen, thus, the State's misrepresentation went unspoiled.

To bolster his argument about the State's fraudulent conduct before the court, petitioner points out the exchange where the court expressed its "displeasure with the District Attorney's Office for

lying under oath one again."

| | |
|---|---|
| The Court: | Wait. I'm going to step off the bench for a second. Will the attorneys come in my chamber? |
| The Court: | Let the record reflect Ms. Bernard filed an affidavit to the Fourth Circuit saying that she did swear that she had delivered the copy of this application and the attachment thereto to the opposing counsel and to the judge of the trial court. And I received this copy at 4:45. Mr. Tervalon, have you received a copy yet? |
| Mr. Tervalon: | Judge it's 5:22, and I haven't seen it. |
| The Court: | Do you have a copy to give him? |
| Mr. Billings: | I don't have any copies, judge. |
| The Court: | In my procure to the Fourth Circuit, I'm going to express my displeasure with the District Attorney's Officer for lying under oath once again. They do it every time. I told you all this morning, didn't I tell you all? I want a copy. Because by law, I'm supposed to have a copy before you deliver a copy to the Fourth Circuit. I didn't get one, until you saw her walk in at 4:45. |
| Mr. Tervalon: | Judge, I've been informed by the Court that I have until 12:00 to make a response. |
| The Court: | That's what the Fourth Circuit told me. |

(Tr. II, Vol. 1, p. 108-9).

From this exchange, it is evident on the record that the State has committed fraud by lying under oath. With this in mind, even though it only pertains to a writ application that the State filed into the Fourth Circuit Court of Appeal, it further reveals the unprofessional misconduct that the State's attorneys where engaged in during the prosecution of this case. How can it be held that petitioner's constitutional rights to a fair rial by jury of his peers where respected and honored when the State, who was caught in a lie by the trial court, is permitted to argue its theory of the case, almost to the point of calling petitioner a liar; to an unsuspecting and unknowing jury? Petitioner argues that the fact finder's duty to weigh the evidence and credibility of the evidence was tainted because they had no

11

reason to believe that the State was dishonest. This dishonesty and lack of adequate representation deprived the petitioner of a fair trial and warrants the grant of relief.

*Assignment of Error II:*

Petitioner's right to a jury trial was violated when one juror was excused for a restroom break prior to receiving jury instructions and the juror was allowed to deliberate with the rest of the jury panel without ever receiving the court's instructions.

While the State was making its closing argument, one juror informed the court that it needed to use the restroom. The court inquired of the State if he was going to be much longer and the State replied that it would. (Tr. II Vol. 2, p. 77). The record reflects that the juror was excused for a bathroom break. (Tr. II Vol. 2, p. 78). The judge gave the jury its instructions. (Tr. II Vol. 2, p. 82-97). The jury retired at 2:05p.m. to the jury room to deliberate and did not return until 2:55p.m. to return their verdict. (Tr. II Vol. 2, p. 97-98). At this point, the court ordered that the records reflect that all twelve jurors and the alternate[1] had returned. (Tr. II Vol. 2, p. 98). The record is silent on the identity of the particular juror who exited for the bathroom break.

A criminal case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. La. Const. 1974. Art. I § 17. In such a case, ten of the twelve person, ten of whom must concur to render a verdict. La.C.Cr.P. art. 782. The court shall charge the jury after the presentation of all evidence and arguments. La.C.Cr.P. art. 801. The court shall charge the jury as to the law applicable to the case; that the jury is the judge of the law and of the facts on the question of guilty or innocence, but that it has the jury to accept and to apply the law as given by the court and that the jury alone shall determine the

---

[1] It is noted in the record that the alternate did not go into the jury room with the other twelve and participate in the deliberations.

12

weight and credibility of the evidence. La.C.Cr.P. art. 802.

Petitioner argues that the entire jury panel did not receive the instructions of the court. The record clearly reflects that one of the jurors, with the permission of the court, absented itself from the court room just prior to the court giving the panel its instructions. The record does not reflect that the juror returned to the court room to receive the instructions. The record only reflects that after deliberation, all twelve jurors returned to the court room to receive the instructions. It cannot be presumed from a silent record that the absent juror returned to receive the court's instructions. Considering the entire record, the court's meticulousness in noting for the record the presence of the parties and jury members throughout, petitioner contends that it is more probable than not that the absent juror did not return in time to receive the court's instructions. This constitutes a violation of due process - that the trial court did not instruct the jury as mandate by law.

In *State v. Cleveland*, III 959 S.W.2d 548 (Tenn. 1997), the Tennessee Supreme Court held that the reinstatement of an original juror who was temporarily absent in the midst of closing argument was plain error not subject to harmless error analysis. Thus, petitioner argues that the error complained of in the instant case is analogous to *Cleveland*, in that the error is a "plain error" or "error patent." As such, petitioner was denied due process on direct appeal when the appellate court failed to recognize as "error patent" that a juror was missing while the trial court gave the panel its instructions. La.C.Cr.P. art. 920 (errors designated in the assignment of errors and that are discoverable by mere inspection of the pleadings and proceedings are the only matters that shall be considered on appeal). Petitioner's conviction and sentence should have been reversed by the appellate court. La.C.Cr.P. art. 921 (judgments or rulings are not reversible by an appellate court because of any error, or defect, irregularity, or variance which does not affect substantial rights of the accused).

13

The *Cleveland* case, supra, sets forth an interesting point as for the matter that the missing juror was absent during the closing arguments in that case. However, petitioner believes that in his case, the matter is much more egregious. Because the missing juror did nor receive the instructions from the court the juror should not have been permitted to deliberate with the remaining panel. Instead, alternate juror should have been pressed into service.

*Assignment or Error III:*

Counsel failed to object to the continuous use of other crimes evidence and failed to impeach the testimony of Ms. Emma Porter.

To establish ineffectiveness, the petitioner has the burden of showing that the identified acts or omissions were outside the wide range of effective competent assistance. *Sanchez v. United States,* 782 F.2d 928, (11th Cir. 1986). To establish prejudice, the petitioner must show a reasonable probability that but for counsel's unprofessional errors the result of the proceedings would have been different. A reasonable probability, is a probability sufficient to undermine confidence in the outcome. If petitioner's counsel would have objected timely, then the proability that the evidence from the witness stand would not have been allowed which would have changed the outcome. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In the instant case, defendant was charged and tried on one count of armed robbery of Ms. Emma Porter. However, defendant was left to defend against two crimes; the armed robbery of Ms. Emma Porter, and armed robbery of Ms. Charles, the cashier in the back of the store.

During defendant's motion hearing his attorney clearly established that he was not charged with the robbery of Ms. Charles. (See motion hearing transcript p. 6-7). However, on several occasions the state brought up the robbery that occurred in the back of the store and also introduced the victim of that robbery as a state's witness. This witness clearly could not have testified to any facts

14

pertaining to the robbery of Ms. Porter, where the witness had already stated that she was unsure of the identity because of the distance between her and the second perpetrator. However, counsel allowed this very person to give details of how she identified the defendant at a photographic line-up and of how she was robbed by gun point. This robbery was mentioned several times by the prosecutor and each time it was mentioned, counsel failed to object.

Defendant's counsel knew the facts and did not object to the use of other crimes evidence as it did not have any relevance in establishing that defendant was the robber of Ms. Porter nor did it have any relevance in defendant's case. Defendant asserts that he has a right to a fair trial one in which the process to convict should be determined by the evidence against the defendant not one which the evidence is of and about another crime that occurred. The defendant could not have had a fair trial when he was continuously forced to defend against two armed robberies. Without counsel's objection, defendant was denied a fair trial and therefore, counsel's representation fell way below the standard of reasonable representation required of attorneys in criminal proceedings. This issue of defending against tow crimes went even further when Detective Carambat was allowed to state that Ms. Charles also identified the defendant when Ms. Charles had stated earlier that she could not positively identify the defendant. She claimed only to have seen the person who robbed her and the other robbery say from a distance. Obviously, had counsel objected to the mention of other crimes evidence the jury would have viewed the evidence of only one robbery and not that of two. Nor would the jury have considered the robbery who held the gun on Ms. Charles. This evidence presented to the jury of another crime that had nothing to do with the crime for which petitioner was charged with a defending against. Therefore, had counsel objected the jury would have been admonished and told to view only the evidence presented about the robbery that the defendant was charged with.

Further, counsel failed to impeach Ms. Emma Porter whom gave a statement to police officers

15

minutes after the alleged crime and thereafter at a motion hearing held on August 31, 2001. In these statements given Ms. Porter gave different descriptions of the perpetrator. At the hearing of August 31, 2001, Ms. Porter stated that the person who robbed her was clean shaven. (See motion transcript p. 5, line 22-28). Then the statement of Ms. Porter suddenly changed at trial to fit the description of the defendant she saw sitting in court. On February 21, 2001, she said that the person who robbed her was a person with a thin mustache. This inconsistent statement given by the victim was a great determining factor that counsel should have objected to or had her impeached as a witness. Counsel should have had the record of Ms. Porter's previous testimony on hand and should have objected to her testimony at trial immediately upon the change in her description of the perpetrator. Furthermore, there were other instances of inconsistencies in statements given by Ms. Porter at petitioner's trial.

Ms. Porter was asked on August 31, 2001, whether she had viewed the photographic line-up with others and she stated, "yes." At trial however, this statement changed and Ms. Porter stated that she had viewed the photographs alone while others were in the room. Had counsel been acting as counsel guaranteed defendants by the United States Constitution, defendant would not have been found guilty based upon the inconsistent statements given by the states witness. Had the proper objections been lodged the court would have ruled those statements to be inadmissible and petitioner's trial would have had a different out come.

## CONCLUSION

Relief is warranted in this case because the defendant has not received a fair trial or the effective assistance of counsel and the geat writ should therefore issue in this case.

Respectfully Submitted;

_____
Donald Gegruy, #360955

16

## AFFIDAVIT

I, Donald Degruy, do hereby aver that the foregoing is true and correct to the best of my knowledge and belief. I further certify that a copy has been served on all interested parties via first class mail through the hands of prison officials on this _____ day of _____ 2006.

**Donald Gegruy, #360955**
**Camp C Wolf-2**
**La. State Penitentiary**
**Angola, La. 70712**

Donald DeGruy #360955

Camp C Dorm #2

Louisiana State Penitentiary

ANGOLA, LA 70712

$ 01.35⁰

JUL 07 2006

ZIP CODE 70712

Loretta G. White, Clerk

US Eastern District court

"500" ____

New Orleans ____ 0130